in the case of Eagan against Dempsey. Mr. Bean. Thank you, Your Honor. May it please the court. Mr. Eagan is severely mentally ill, has only an eighth-grade education, and absolutely no litigation experience. So Mr. Eagan made seven requests for counsel to assist him with the daunting task of litigating his deliberate indifference claims. He made these requests as the case progressed from the pleading stage to discovery and ultimately to summary judgment. The district court denied all these requests and erred under this court standard set forth by Pruitt v. Mote by failing to conduct a particularized analysis of the difficulties of Mr. Eagan's case and Mr. Eagan's personal characteristics. Most importantly, the district court failed to grapple with the implications of Mr. Eagan's severe mental illness handicap and the need for expert testimony. Mr. Eagan was prejudiced by his general inability to effectively conduct discovery and present evidence at summary judgment. Had the district court conducted the proper particularized assessment of Mr. Eagan's abilities as required by Pruitt and its progeny, it would have necessarily concluded that Mr. Eagan qualified for the assistance of counsel. And with the help of counsel, Mr. Eagan would likely have been able to develop the summary judgment record further and survive at summary judgment. This court has held that it is an abuse of discretion under Pruitt to apply, to fail to apply a standard or to apply only part of a standard. Here, the district court abuses discretion by failing to apply the full Pruitt standard and ignoring various factors. For instance, in Pruitt, this court has held that if the psychological history of a of a plaintiff is known, the court should consider that history. And here the court failed to do so. In nearly every filing requesting counsel, Mr. Eagan stated that he needed the assistance of counsel because he is severely mentally ill and is prescribed a mind-altering medications that impede his ability to concentrate and to put together coherent thoughts. Troublingly, however, the district court appears to have doubted the veracity of Mr. Eagan's claim that he suffered from mental illness despite evidence in the record supporting that claim. What do you base your estimation that the district court actually doubted it out of the magnolias? Your Honor, the district court noted a couple times that Mr. Eagan had not provided evidence of his mental illness handicap. For instance, it did so in the September 16th written opinion. And then again in its text order on October 11th, 2016, where it says plaintiff again repeats his claim that he suffers from a mental illness and is unable to represent himself. Plaintiff provides no factual support for this claim and his motions are denied for the reasons previously stated by the court. And then subsequently Mr. Eagan ultimately provides several dozen pages of mental health records that show that he's heavily medicated, that he's on suicide watch, that he's been diagnosed with schizophrenia, bipolar, depression, and the district court when it addresses that only says that these records show that Mr. Eagan is able to read and write. It sidestepped grappling with the implications of Mr. Eagan severe mental illness. The Mr. Eagan, you know, aside from the records, Mr. Eagan's, you know, pleadings showed as a return address that he was in a psychiatric unit and it's undisputed in this case that he had to be treated for the psychotic episodes that he was experiencing. So it should have been. The district court was fully apprised of the nature of the illness before he finally ruled. Is that right? That's correct. There were evidences and keep in mind there's several different requests here and several different denials of those requests, but but ultimately the district court was aware and was privy to the medical records that were in in the in the test in the in the record. And what precisely would precisely would Mr. Eagan have done if he had counsel? How would he have augmented the record? First and foremost, your honor, depositions would have been important here. You know, this case is this court has held in numerous cases that depositions would are critical and these deliberate indifference claims where the state of mind of the defendants is at issue and specifically, for instance, Mr. Eagan could have deposed Dr. Dempsey and asked him and inquired into why Dr. Dempsey refused to treat Mr. Eagan further for the pain, discomfort, stiffness, locked jaw that he was experiencing on December 1st and December 2nd. There's medical records in evidence. There's Dr. Dempsey's affidavit in evidence that says that treatment was unnecessary. The the log that Dr. Dempsey filled out has a sentence on there that says that he thought that Mr. Eagan was exaggerating his illness in an attempt to secure a transfer. A deposition would have allowed Mr. Eagan to question Mr. or sorry, Dr. Dempsey's basis for that belief. Dr. Mr. Eagan could have also have deposed Mr. Sullivan and the other holding cell defendants to inquire about what exactly transpired in the holding cell on the evening of November 30th. The records are not clear exactly what was said between the holding cell defendants and Dr. Dempsey and that issue is open if the holding cell defendants had not adequately conveyed the severity of Mr. Eagan's situation. The fact that Mr. Eagan was continuing to, you know, thrash his head and it was in the thralls of psychotic episode. Then if Dr. Dempsey was unaware of those facts when he ordered Mr. Eagan to be returned to his cell, then the holding cell defendants could potentially be a jury could find that they did that they were liable under the deliberate indifference standard. Also document discovery. There was some document discovery and written discovery in this case. Mr. Eagan did so with the assistance of jailhouse lawyers, but a review of the record shows that this document discovery that was conducted was less than fruitful at best. Mr. Eagan compiled a request for admission and a couple of interrogatory requests for the defendants. The defendants There was a transfer involved here wasn't there? There was your honor. Mr. Eagan was transferred. Precisely. When was he transferred in the court? Was it during the course of this litigation? That that's correct. Your honor. It was about when his transfer was sorry, your honor. I what I'm trying to get at was what stage of the litigation was ever your honor in the middle of discovery. That's correct. Yes, and then that added to Mr. Eagan's situation where he was unable to conduct discovery with, you know, being separated from the jailhouse lawyer that was assisting him being housed at a facility that the that the officers were no longer at. Does the record show whether he ever apprised the district judge of the transfer and of the subsequent increased difficulty he might be having in litigating the case because of the transfer. Yes, your honor. So he did apprise the district court of the transfer on on August 25th, 2016. He filed a motion for status the court informing his transfer  Correctional Center. And then on February 13th, 2017 is filing which was titled a second motion for reconsider had several several paragraphs about he was transferred and that this would make difficult make it difficult for him to interview inmates to get their depositions to obtain medical records to obtain prison procedures. He listed out the ways that the transfer would have been difficult for him. Did the did your opponents ever apprise the district judge of the reason for the transfer? I am not aware your honor. I do know. I don't I don't think that the dish that the that either the state or dr. Dempsey's counsel opposed or responded to any of mr. Egan's requests for counsel and I don't think they otherwise spoke to the to the reasons for the transfer. And what was the district judge's reaction to this filing of apprising him of the transfer of the increased difficulty? That's that's part of the problem here. Your honor. Is that the district court did not address this particular argument that mr. Egan raised and it didn't it didn't address other arguments that mr. Egan raised under under this court's precedent in Santiago. The district court must address when there's a transfer because of the difficulties that that raises for pro se incarcerated litigants and the district court failed to do. So also other cases that speak to this principle or pin. Well, the 2018 decision in the car Junior v. Anderson.  addressed the significance of the transfer and failed to do so. Mr. Bean. Let me tell you what is my difficulty with your case and then let you answer that and then I better let my colleagues have some time with you. I am I think this was a fairly I mean, I am concerned about the way the district judge handle this on the other hand. I I'm having trouble seeing how it really would have made a difference in the outcome of this case specifically. I do. Can you help me on that? Yes, your honor. We readily recognize that the evidence that the that the record below it it severely underdeveloped and we argue that that goes to prejudice. But the district court's ruling as to all of the defendants was that Mr. Egan failed to come forward with any evidence. It was a no evidence ruling and because of that it's hard to say what you know, what have what would have been there and what would have been available to Mr. Egan, but we don't have the opportunity to without having the opportunity to oppose defendants who conduct, you know, thorough document discovery, but the district court relied on dr. Dempsey's uncontroverted testimony. It credited his testimony that Mr. Egan was likely exaggerating these illnesses because it was not it did not appear to be a side effect of how doll that's that's medical expert testimony that Mr. Egan was unable to secure without a medical expert of his own or anyone to speak to those things and because of that there was only one side of the story told especially with the medical implications of the how the administration and the failure to treat this his symptoms on December 1st and December 2nd. If I'm I'll break my word and ask you one more question that all seems very very pertinent. If we were trying a had tried a malpractice case, but given the standards of the 8th Amendment, how would this all have made a difference? It appears the physician at least was attending him and making medical judgments. Yes, well, the it would have made a difference because a expert could have testified that Mr. Or dr. Dempsey's failure to treat Mr. Egan despite his pleased to do so despite his apparent, you know, discomfort and pain that he was experiencing. He didn't give him in as much as a Tylenol. So the failure to do anything we would contend rises above malpractice or malpractice and would amount to an abandonment of a guy Tylenol if he's had a dose of held off. I what I mean, we're not contending that the that the that the symptoms that Mr. Egan was experiencing on the first and second were necessarily side effects from how that we we don't know that's medical expert testimony that quite frankly, I can't speak to but what we do know is that dr. Dempsey did absolutely nothing to treat those symptoms and because of that an expert could could testify to those issues. I see your honor that I only have about a minute and a half you do but I have I feel bad about coming into your rebuttal time, but are you challenging the decision to administer how to or are you focusing solely on dr. Dempsey's failure to treat Mr.  He says he experienced after he was administered the house or your honor the the latter the district court held in its merits briefing that the administration of held on was not on not at issue even though Mr. Egan focused on that issue throughout his summary judgment things which again is another way that he was prejudiced by focusing on the wrong issue would just focus on the side effects or the experience on the first and second. Thank you. Thank you, your honors. Thank you. Mr. Bean and I will round you up and give you a full minute for rebuttal. Thank you. Your honor. Ms. Hanson. Good morning. It may please the court assistant attorney general Christina Hanson on behalf of the state defendants at police summary judgment in favor of state defendants at police should be affirmed both because the district court did not abuse its discretion and deny even motions for recruitment of counsel and because no reasonable jury could find in his favor on either of his eighth amendment claims as to the excuse me for a moment. Mr. Egan has alleged that officer Sullivan was taunting him on December 1st. Is it not a fair inference that the taunts were in response to Mr. Egan's inability to move and if so could a fact finder infer that he Sullivan was aware of Mr. Egan's need for medical attention but ignored it. Not under the facts here. Your honor the testimony that that Egan gave was that Sullivan was one of Sullivan was on the 3 to 8 on the afternoon to evening shift 3 to 11 p.m. I believe and Egan's testimony was that sometime during that shift after he had been seen by medical professionals Sullivan walked by his cell and said something along the lines of your faking under the circumstances there. There is no evidence. He presented no testimony that he notified Sullivan that he was in need of medical assistance that he was in severe pain and needed to be seen by a doctor but even if he had it the evidence in the record demonstrates that he had already been under the care of a physician and and Sullivan would reasonably under the deliberate indifference standard Sullivan could reasonably rely on the medical judgment of the of the medical professionals that were that were overseeing Egan's care. And so for that reason summary judgment was proper in favor of Sullivan and as to the first claim against the state defendants the the the claim that they failed to respond to a serious risk of harm of self-harm to him the evidence in the record Egan's own testimony defeats a claim against the state defendants on that claim as well. He claims that they should have been the evidence his own testimony establishes that those defendants responded to any risk of harm when he began banging his head in his cell by Egan's own testimony Barry responded immediately took him to the holding cell where Morehouse administered first aid and called his physician. It was upon his physician's order that he was taken back to his cell after first aid had been administered. But it's important to note here that he was taken back to a crisis watch cell and so he was still being monitored every 10 minutes for any potential self-harm and by his own testimony when he the defendants immediately responded either Barry or Sullivan again took him back to the holding cell where he was administered follow-up first aid and his physician was again contacted and it was at that point that the Haldol injection was administered. And so even it plaintiff contends that there's that that the recruitment of counsel issue didn't lead to any development of fact that he could have developed more facts, but the evidence in the record. Mr. Egan's own testimony establishes that he could not that he could that no reasonable jury could find in his favor with respect to these claims. Even if he presented a serious risk of self-harm. There's his own testimony establishes that the defendants in this case responded to to any risk of harm and took reasonable steps to address the risk. And additionally and for those reasons appointment of counsel would not have mattered in this case, but I would also note that the district court did not abuse its discretion and denying the motion for appointment of counsel. Based on the evidence in the record. You can appeared competent to litigate his claims in light of their difficulty. This court does not ask whether I am having a real problem with that argument. I must tell you I don't think the judge complied with this court's template in Pruitt at all. Egan had stated that he was relying on the help of jailhouse advocates to prepare his pleadings. He never really assessed the overall complexity of the case and what would be required for Egan to make a case including the need to examine Dempsey on medical issues and possibly to present medical evidence of his own. He the judge never considered the extent to which Egan had the ability as a layperson to present such a case. He never considered the extra difficulty that Egan's mid litigation transfer to a different prison might impose and he never truly undertook real inquiry into Mr. Egan's mental status and how his mental health issues might interfere with the pursuit of his claims. I'm very disappointed in that aspect of our case. If I could just highlight a few things that the district court looked at your honor in terms of the complexity of the case with respect to the treatment that he received or the lack of treatment that he received on December 1st and 2nd. The issue wasn't really a complicated medical determination, but it really turned on whether a jury would believe or whether there was sufficient evidence that his his complaints of pain were ignored. And so that really isn't the type of evidence that would require that really isn't the type of that's a credibility issue that wouldn't necessarily turn on an expert testimony or the need for expert testimony under the circumstances. And with respect to his ability as a layperson and the fact that he was relying on jailhouse lawyers. He did state in his motions and he did state in his deposition that he received assistance of jailhouse lawyers throughout throughout the proceeding. And while he did present and while he did present evidence for guard that he had a that he suffered from schizophrenia and had mental health issues. The district court did acknowledge that he had those challenges, but the district court looked at those challenges in light of what he was filing. He was managing his case in a way that demonstrated confidence. He was he engaged in discovery. He submitted requests for admission from the defendants and received them. He sought interrogatories and received responses to those. He had his medical records. He had, you know, he'd obtained documents. He had filed a coherent and responsive motion or response to an emotion for summary judgment on exhaustion. He had survived merits review and he was keeping up with the litigation. He was filing motions to compel discovery when he didn't get them. He was seeking additional time when he needed additional time to respond to motions that the progress of his case demonstrated that he was able to understand the issues and respond to the judge's orders. And while he was transferred during the case transfers are very common. There is something that all pro se partner litigants faith and there was no evidence in the record that his ability to conduct. Don't you think Miss Hanson a district judge ought to raise his eyebrows and make an inquiry when somebody a litigant is transferred during discovery in a federal case he has against the prison authorities that does realize that's the kind of thing where you judge ought to make some eyebrows as to why that transfer was made. Well, certainly it would be preferable if he had addressed it in his orders, but the transfer was to a mental health facility at Dixon. And so, you know, prison transfers are routine and and there was not not necessarily any indication that it was for any reason other than prison administration. I think that I'm out of council. I don't think the problem necessarily is that the transfer was retaliatory. It's that after the transfer it's much more difficult for a pro se prisoner to make the case. That's something I wish you would address. Certainly, your honor. Certainly it can be but there was nothing in Mr. Egan's motion simply indicated that you know, he was having trouble reaching witnesses or he could develop his cases differently, but he did not point to any specifics as to why the transfer made that more difficult. He had already obtained statements from witnesses in his case. He had submitted with his summary judgment papers affidavits from other inmates that that witnessed that presented testimony regarding the incident. He had obtained discovery written discovery from the from the defendant. He really didn't point to any issues that he was having you know, filing documents on time or obtaining responses to his written discovery or any counsel. I think I understand your position and as your time has expired, I will turn the floor over to Mr. Wimmer. Thank you, your honor. May it please the court. My name is Alex swimmer on behalf of a peli. Dr. Dempsey. The question before this court is whether Mr. Egan suffered from a serious medical need on December 1st and 2nd of 2014 that Dr. Dempsey knew about and ignore. I was pleased to hear during Mr. Dean's arguments that he seems to be not seeking any November 30th claims. However, in their briefing, they do argue that they are pursuing a claim against. Dr. Dempsey on November 30th for returning Mr. Egan to his cell prior to the administration of health all Mr. Wimmer, forgive me. There appears to be no dispute that Dr. Dempsey did not provide or order any medical treatment for Mr. Egan on December 1st or 2nd, you know, putting November 30th to one side. If we credit Mr. Egan's account of his own condition on those dates, then couldn't a fact finder infer that Dr. Dempsey was deliberately indifferent to Mr. Egan's serious medical needs. You see, your brief seems to depend on our accepting Dr. Dempsey's account of Mr. Egan's condition rather than his own account. No, Your Honor. That is not what we're asking the court to narrowly look at a difference of opinion between Dr. Dempsey and Mr. Egan. What we what we state in our brief is that not only were Mr. Egan's claims of his serious medical need on those two days contradicted by Dr. Dempsey's affidavit as well as his medical records, but they're also contradicted by the crisis watch logs which indicate that on December 1st and 2nd contrary to Mr. Egan's testimony, Mr. Egan was standing at his cell door. He moved from his bed to the floor. He ate lunch and dinner and we also know that on December 2nd a non-party social worker, Ms. Andrea Moss saw Mr. Egan shortly before Dr. Dempsey saw him and her records and again, she has no dog in this fight. Her records indicate that Mr. Egan was standing that he was able to converse with her and indicated nothing of the sort of serious medical need involving severe lockjaw, inability to eat, being I believe Mr. Egan's testimony was that he felt like he was nailed to the floor. And so not only is it contradicted by Dr. Dempsey, but it's also contradicted by other contemporaneous records in the Crisis Watch Logs and in Ms. Moss's records. Doesn't that just create a genuine issue of triable fact? No, your honor. I don't believe it does. Pursuit to Scott B. Harris, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, courts should not adopt that version of events for purposes of summary judgment. And I think that that's that that language from Scott B. Harris is exactly the case here. Mr. Egan's testimony is the only evidence of his alleged serious medical need. Everything else in the record indicates that Mr. Egan was not suffering from such a serious problem as he claimed he did. The only evidence of any sort of medical problem on December 1st and 2nd other than Mr. Egan's testimony was on December 2nd when Dr. Dempsey went to visit him and Mr. Egan complained of neck pain. Dr. Dempsey conducted an examination and found that he had full range of motion and was able to open his mouth, move his neck, and his jaw with no problems. And there are just such obvious disputes of material fact as to what occurred on December 1st and 2nd. And if we credit Mr. Egan's account, as we must, then he was suffering severe symptoms, presumably as a result of the Haldol injection on the 30th, including an inability to move and a locked extremely painful jaw on December 2nd. The inability to move, I guess, starts on December 1st. And Egan has personal knowledge of his own condition on those dates and his testimony supports his version of events. And on summary judgment, it's supposed to be credited. So because of that, I certainly am sitting here and presuming that Egan was an extremist at that time. Your Honor, if I may respond, I see my time is about to expire. The only way that a plaintiff's testimony in that regard should be given credit on summary judgment is if a reasonable jury, a reasonable fact finder, could look at the totality of the record and find that it was a reasonable story. In this case, we believe that the totality of the record, the contemporaneous records of the crisis logs, Andrew Moss's records, and Dr. Dempsey's records show that no reasonable jury person could find that Mr. Egan was honest in his account. Mr. Wimmer, before you sit down, what is when your client was advised of the locked jaw situation, what was his reaction? Well, Your Honor, there's no evidence that my client was ever advised of a locked jaw situation. I see. The only time, again, the only time in the record other than Mr. Egan's testimony that Dr. Dempsey had any indication that Mr. Egan was suffering from any sort of pain was on December 2nd when he did an examination of his neck and found no lack of range of motion that he was able to open his mouth and move his jaw freely. And Your Honor, I see that my time has expired. We ask that the District Court be affirmed. Thank you. Any further questions for Mr. Wimmer? All right. Thank you very much. Thank you very much, Mr. Wimmer. Mr. Bean, we held Mr. Wimmer overtime, so you're now up to three minutes for rebuttal. I appreciate that, Your Honor. A couple quick points with the limited time. There is doc evidence in the record that Mr. Dempsey, or sorry, that Mr. Egan told Dr. Dempsey about blocked jaw, and that is Mr. Egan's testimony. Mr. Wimmer cited to the case Scott B. Harris about how contradicted testimony shouldn't be credited. I think it's important to note that that case is about a videotape. A videotape shows what obviously occurred. Despite deposition or testimony conflicting that videotape, that obviously shouldn't be credited here. It's a different situation. We have medical records and testimony from other individuals that conflicts with Mr. Egan's testimony. And when there's that kind of dispute of fact, Mr. Egan's testimony should be credited as summary judgment. A couple points on the assistance of counsel. This case does involve complex medical evidence. There are deliberate indifference claims when they're just against prison officials where no medical medical care was provided. Those will generally be more simple cases. But when a doctor gets involved and exercises his professional judgment as a doctor in rendering treatment or some treatment or no treatment, that then implicates what the standard of care for a doctor is. And that's something that a pro se litigant can't speak to. Thomas is an excellent example of this where the case involved complex medical evidence because it involved claims against a psychologist for denial of necessary medical treatment. And finally, Your Honor, last point is the ability Ms. Hansen referenced Mr. Egan's ability to keep up with the litigation. I think it's critical that the court keep in mind that his pleadings, his litigation, was all with the help of a series of jailhouse lawyers. And this court has clearly held in Henderson that when a jailhouse lawyer is involved, the court needs to look past that and needs to assess Mr. Egan's abilities. Henderson speaks to that and so does Pruitt. It needs to be an assessment of Mr. Egan's abilities to litigate the case, not the abilities of a jailhouse lawyer. Mr. Egan's remarkable ability to even keep up was thanks to a series of jailhouse lawyers that were moved here and there and he couldn't count on them and he ultimately needed to, the district court ultimately needed to assess Mr. Egan's abilities. Unless the court has any further questions, in closing, we ask the court to vacate the ruling for summary judgment and remand the case to the district court with instructions to appoint counsel for Mr. Egan so that a full record may be developed. Thank you, Your Honors. Thank you, Mr. Bean. The court appreciates your willingness and that of your law firm to step in in this case and we appreciate the assistance you provided to the court as well as to your client. The case is taken under advisement.